131 F.3d 666
 18 O.S.H. Cas. (BNA) 1104
 CATERPILLAR INC., Petitioner,
v.
Alexis M. HERMAN, Secretary of Labor, and International
Union, United Automobile, Aerospace and
Agricultural Implement Workers of
America, Local 145, Respondents.
 No. 97-2055.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1997.
Decided Dec. 9, 1997.
 
 Robert E. Mann, Sally J. Sctoo (argued), Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Petitioner.
 Bruce Justh (argued), Dept. of Labor Appellate Litigation, Washington, DC, John H. Secaras, Dept. of Labor, Chicago, IL, Ann Rosenthal, Thomas S. Williamson, Jr., Dept. of Labor, Office of the Solicitor, Washington, DC, Ray Darling, Jr., Occupational Safety & Health Review Com'n, Washington, DC, for Respondent.
 Jerome Schur, Martha A. Garcia (argued), Katz, Friedman, Schur & Eagle, Chicago, IL, Jordan Rossen, Intern. Union, UAW, Detroit, MI, for United Auto Workers, Local 145, Intervenor.
 Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 During an acrimonious strike at Caterpillar's plant in Aurora, Illinois, Local 145 of the United Auto Workers asked for copies of Caterpillar's injury logs. These contain names and badge numbers of workers who crossed the picket lines, and Caterpillar feared that members of the Union might use this knowledge to harass or injure the strikebreakers. It furnished redacted versions of the logs, blacking out the employees' names and numbers. Chicago Tribune Co. v. NLRB, 79 F.3d 604 (7th Cir.1996), holds that if the Union had made the request under the National Labor Relations Act in its role as the workers' bargaining representative, Caterpillar would have been entitled to conceal the strikebreakers' names. But the Union instead made its request under 29 C.F.R. § 1904.7(b)(1), which reads:
 
 
 2
 The log and summary of all recordable occupational injuries and illnesses (OSHA No. 200) (the log) provided for in § 1904.2 shall, upon request, be made available by the employer to any employee, former employee, and to their representatives for examination and copying in a reasonable manner and at reasonable times.
 
 
 3
 The Department of Labor, which promulgated this regulation on the authority of the Occupational Safety and Health Act, issued a citation accusing Caterpillar of wilfully violating a regulation. It sought a penalty of $20,000.
 
 
 4
 Caterpillar offered three defenses to the citation. First, it contended, § 1904.7(b)(1) creates a requirement that a union's request be "reasonable", which Caterpillar argued means that the request must be related to safety as opposed to a labor dispute. It sought to establish that Local 145's request was unrelated to any actual concern about the strikebreakers' safety. Second, Caterpillar presented a "greater hazard" argument--that revealing employees' names does not promote safety but may endanger the health of the strikebreakers. The administrative law judge rejected both defenses on the pleadings. The first submission was irrelevant, the ALJ wrote: "no statement of purpose is required by § 1904.7; no purpose, therefore, may be deemed 'improper.' " Caterpillar Inc., 1997 WL 123460, * 2 n. 1, 1997 OSAHRC LEXIS 20 at * 2 n. 1. The second defense failed, according to the ALJ, because Caterpillar had not sought a variance from administrative officials before redacting the logs. Finally, the ALJ disagreed with Caterpillar's submission that the violation was too trivial to support a fine. Although the ALJ determined that the violation was wilful because Caterpillar intentionally failed to carry out a legal duty (its good faith in believing that it had a defense was irrelevant, see Reich v. Sea Sprite Boat Co., 50 F.3d 413, 415-16 (7th Cir.1995)), he reduced the sanction from $20,000 to $5,000, writing: "The employee representative was provided with copies of the OSHA 200 logs, albeit with some names redacted, and there is no reason to believe that the redaction of ... names and badge numbers diminished the level of protection afforded to Caterpillar employees. I find that the proposed penalty is excessive." The Occupational Safety and Health Review Commission declined to review the ALJ's order, making it the final agency decision.
 
 
 5
 We are no more impressed than was the ALJ by Caterpillar's argument that an employer's obligations are qualified by a requirement that a union's request be "reasonable." Although access occurs "in a reasonable manner and at reasonable times", these modifiers do not affect what is to be produced: the logs, not an extract from the logs. The regulation does not require a union to give (or have) a reason: it requires production on request. "Reasonable time" usually means business hours, with some advance notice. Perhaps an employer could argue that the midst of a short strike is not a "reasonable time" for disclosure given management's preoccupation with other issues, but that is not Caterpillar's position: it asserts a right to redact the logs no matter how long the strike lasts (this one continued a year and a half) and after the strike ends, as long as it believes that disclosure of names would create a risk to employees who crossed the picket lines. It wants a substantive limitation on access, not a reasonable-time-place-and-manner limitation. Obtaining names for an improper purpose may violate some other law, but proof of a union's "good" purpose is not a precondition to the employer's obligation under the rule. A reasonable-purpose requirement would complicate administration of a simple rule by creating a litigable issue in every case. The Secretary of Labor--the author of this rule, and the one whose interpretation matters, see Martin v. OSHRC, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)--informs us that a person making a request under § 1904.7(b) need not state the purpose of the request or demonstrate its reasonableness. That reading, which is consistent with the regulation's text, is one we must respect.
 
 
 6
 Similarly we accept the Secretary's view that the Commission cannot label a violation de minimis and disregard it; that would transfer the Secretary's prosecutorial discretion, see Cuyahoga Valley Ry. v. United Transportation Union, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985), to the Commission. If the Secretary issues a citation, the Commission must determine whether the violation occurred and set an appropriate penalty. Trivial violations deserve trivial fines, but the Secretary is entitled to insist on some exaction even for the equivalent of jaywalking.
 
 
 7
 The greater-hazard defense is a different matter. This defense, formulated in a common law manner by the Commission, appears to be acceptable to the Secretary as a rule of law. (This weaselly "appears to be" formulation reflects the fact that we cannot find a clear public statement by the Secretary on this question. Section V.E.3.b of the OSHA Field Operations Manual recognizes the defense, but the Manual is not a rule with legal effect. What matters for our purposes, however, is that the Secretary does not contend that the rules implementing the statute require absolute compliance.) According to the Commission, the greater-hazard defense is available when the safety risks created by compliance with the formal rules exceed the risks created by noncompliance, noncompliance is the only way to curtail this hazard, and it is impractical to obtain a variance from the Secretary. Walker Towing Corp., 14 OSHC (BNA) 2072, 2078, 1991-93 OSHD (CCH) p 29,239 at 39,161 (1991). The defense rests on the proposition that the regulations are designed to make workplaces safer, coupled with the recognition that industry is so diverse that any rule is bound to be counterproductive now and again. Yet however attractive a greater-hazard defense may be in the abstract, it could make administration of the statute impractical. Bright-line rules would be converted into standards of reasonable conduct; regulations would become subject to case-by-case debate about their efficacy. Losing the benefit of rules could do more to undermine safety than would their uniform application. So the Commission has limited the defense to situations in which noncompliance is a last resort, and even then only when an application for a variance would be impractical.
 
 
 8
 It is this last requirement on which Caterpillar tripped, according to the ALJ. It did not apply for a variance, and that was that. Yet the defense stated by the Commission does not make a variance an (invariable) condition. Likewise the Secretary's Field Operations Manual, which says that the defense is available when application for a variance would be "inappropriate." An employer with a variance in hand need not mount a defense; behavior authorized by a variance does not violate the rule, and no citation will issue. The greater-hazard defense does not come into play unless the employer lacks a variance, which normally means that the employer did not ask. (There can't be many cases in which an employer mounts a successful greater-hazard defense after a variance application is denied; the Commission is not entitled to reject the Secretary's interpretation of the statute.) Doubtless an employer should seek a variance when it can, and an unjustified failure to do so defeats a greater-hazard defense. Modern Drop Forge Co. v. Secretary of Labor, 683 F.2d 1105, 1116 (7th Cir.1982); Reich v. Trinity Industries, Inc., 16 F.3d 1149, 1154 (11th Cir.1994). But the ALJ's demand that the employer seek a variance whether or not an application would have been possible is not a proper application of the greater-hazard defense.
 
 
 9
 Caterpillar could not have obtained a variance before violating the regulation--and not only because by the time it received a ruling on an application it would long have been out of compliance with § 1904.7(b). The Secretary's authority to grant exceptions comes from § 6(b)(6) of the OSH Act, 29 U.S.C. § 655(b)(6), which permits a variance "from a standard or any provision thereof promulgated under this section." Regulation 1904.7(b) is not a "standard"--which is to say, a safety rule for the workplace, cf. Adamo Wrecking Co. v. United States, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978)--promulgated under § 6. It does not affect conditions of employment, and it rests on the Secretary's authority under §§ 8 and 24 of the OSH Act rather than § 6. See 43 Fed.Reg. 31329 (1973). Section 6(b)(6) imposes numerous other limitations, such as "inability" to comply with the standard, that Caterpillar was unable to satisfy. It was able to hand over the logs; it just offered a reason why doing so would reduce employees' aggregate safety. So a variance was unattainable, an application for a variance would have been pointless, and the ALJ's approach is correspondingly untenable.
 
 
 10
 The Secretary offers an alternative defense of the decision: that Caterpillar has not established that the Union would have misused the information. Needless to say, it is impossible to demonstrate conclusively what would have happened had events turned out differently. Caterpillar was making a prediction, based on untoward acts by union members during the strike; the ALJ must assess the probabilities rather than demand certainties. Even a small risk may be a "greater hazard" if the safety benefits of compliance are negligible. The ALJ stated that revealing the names would not have made the workplace safer. A union does not need to know the names of injured persons to determine whether the conditions of employment are hazardous; the nature and frequency of injuries reveal the dangers. The Union contended that it needed the names to conduct follow-up investigations that would have produced additional information about hazards, but this argument did not impress the ALJ, whose decision on this issue is not undercut by legal error. What is more, the Department of Labor had access to the unredacted logs under § 1904.7(a). Caterpillar Inc. v. Reich, 111 F.3d 61 (7th Cir.1997), holds that an employer may remove names from copies it turns over, provided it offers the Department access to the full logs at the plant. That opinion implies that the Department did not think the names important: offered the option to inspect the original logs and write down the employees' names, the inspector left the plant with the redacted logs instead. The Secretary's brief in this case does not contend that access under the terms of our prior opinion has been an unsatisfactory means of discovering facts vital to safety. If revealing the names would not have promoted safety but could have led to injuries, and redaction was the least departure from the regulation essential to produce that safety benefit, then the greater-hazard defense is available in principle. The case is remanded so that the Commission may determine whether it is applicable in fact.
 
 
 11
 The petition for review is granted, the order of the Commission is vacated, and the case is remanded for further proceedings consistent with this opinion. her proceedings consistent with this opinion.