**LEVEL 3 COMMUNICATIONS, INC., Plaintiff–Appellant,**

v.

**FEDERAL INSURANCE COMPANY and Pacific Insurance Company, Defendants–Appellees.**

No. 98–2094.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1998.

Decided Feb. 16, 1999.

Brian D. Sieve (argued), Brett A. Bakke, Kristine L. Anderson, Kirkland & Ellis, Chicago, IL, for Level 3 Commmunications, Inc.

Jonathan A. Constine (argued), Hogan & Hartson, Washington, DC, for Federal Insurance Co.

David L. Koury, Peterson & Ross, Chicago, IL, for Pacific Insurance Co.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

POSNER, Chief Judge.

This diversity suit, governed by Nebraska law (though no peculiarities of that law bear on the case), seeks $14 million in damages for breach of a contract of directors' and officers' liability insurance. Peter Kiewit Sons', Inc. was sued along with one of its directors in 1994 by six (two others joined later, making eight) of its minority shareholders for securities fraud and related torts. Kiewit's successor seeks through the present suit, which is against its primary and excess insurers (but we'll ignore the latter, and pretend there is just one insurance company, Federal, to simplify our opinion further), to recoup the costs that it incurred in defending against and eventually settling the securities case.

One of the plaintiffs in that suit, Pompliano, who joined it six months after it had been filed, had until June 1991 been a director of one of Kiewit's subsidiaries. The insurance contract excludes liability on account of any "Claim made against an Insured Person" if the Claim is "brought or maintained by or on behalf of any Insured." "Insured Person" is defined to include a "person who *has been*, now is, or shall become a duly elected director or a duly elected or appointed officer of the Insured Organization" (emphasis added), and "Insured Organization" is defined as Kiewit plus its subsidiaries. So Pompliano was an "Insured." The district court held, granting summary judgment for Federal, that the "Insured versus Insured" exclusion (a standard exclusion in D & O

policies, 2 William E. Knepper & Dan A. Bailey, *Liability of Corporate Officers and Directors* § 25–7, p. 443 (5th ed.1993); Nicholas E. Chimicles & M. Katherine Meermans, "The Insured vs. Insured Exclusion in D & O Insurance Policies," C938 *ALI–ABA* 749 (1994)) was therefore applicable. The result was that Kiewit had no coverage. The issue is whether the presence of one "Insured" in a group of plaintiffs was indeed enough to trigger the exclusion.

 Read literally, the contract clearly excludes coverage for the part of the settlement, and other expenses of the securities suit, allocable to Pompliano (the significance of this qualification will become clear later), as he was a plaintiff and a former director of one of Kiewit's subsidiaries. But Kiewit asks us to read the "Insured versus Insured" exclusion in light of its purpose, which is to exclude coverage both of collusive suits— such as suits in which a corporation sues its officers or directors in an effort to recoup the consequences of their business mistakes, e.g., *Township of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 119 (3d Cir.1997); *Fidelity & Deposit Co. v. Zandstra,* 756 F.Supp. 429, 431–32 (N.D.Cal.1990); 2 Knepper & Bailey, *supra,* § 25–7, p. 443, thus turning liability insurance into business-loss insurance—and of suits arising out of those particularly bitter disputes that erupt when members of a corporate, as of a personal, family have a falling out and fall to quarreling. *Township of Center v. First Mercury Syndicate, Inc., supra,* 117 F.3d at 119. Kiewit argues that the suit in which Pompliano is a party is of neither sort, and would not be even if he were the only plaintiff.

The fallacy in the argument is in confusing a rule with its rationale, or in turning a rule into a standard by reference to its rationale. There is a tradeoff between clarity and ease of application, on the one hand, and a tight fit between a legal or contractual norm and its purpose, on the other. A simple, flat rule is deliciously clear and easy to apply, but it may be both underinclusive and overinclusive in relation to the purpose that animates it. A standard, like "no coverage for collusive suits or lovers' quarrels," is contoured exactly to its purpose, but it cannot be applied without a potentially costly, time-consuming, and uncertain inquiry into the nature of the underlying dispute sought to be covered. *Caterpillar, Inc. v. Herman,* 131 F.3d 666, 668–69 (7th Cir.1997); *American Hospital Ass'n v. NLRB,* 899 F.2d 651, 659–60 (7th Cir.1990). It is apparent from the wording they chose that the parties opted for the rule, not the standard, in agreeing to the "Insured versus Insured" exclusion.

But when the application of a rule leads to a truly whacky result, a more than suspicion arises that the parties can't have set *so* high a value on clarity that they would have thought such an application a proper interpretation of the rule. This is true whether the rule is statutory, e.g., *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 453–55, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); *AM Int'l, Inc. v. Graphic Management Associates, Inc.,* 44 F.3d 572, 577 (7th Cir.1995); cf. *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928) (Holmes, J.), or contractual. E.g., *Grun v. Pneumo Abex Corp.,* 163 F.3d 411, 420 (7th Cir.1998); *AM Int'l, Inc. v. Graphic Management Associates, Inc., supra,* 44 F.3d at 577–78; *Chicago Board Options Exchange, Inc. v. Connecticut General Life Ins. Co.,* 713 F.2d 254, 258 (7th Cir.1983); *Outlet Embroidery Co. v. Derwent Mills,* 254 N.Y. 179, 172 N.E. 462, 463 (1930) (Cardozo, C.J.); *McMahon v. Chicago Mercantile Exchange,* 221 Ill.App.3d 935, 164 Ill.Dec. 369, 582 N.E.2d 1313, 1320 (1991). Kiewit argues along these lines that the "Insured versus Insured" exemption can't mean what it says, because if it did then even if Pompliano were merely an unnamed class member in a securities class action, with a stake of $10 in the outcome of the suit, and even if he had resigned his directorship in a subsidiary of Kiewit 20 years ago, Kiewit would lose its insurance coverage. To this, Federal weakly replies that a suit by a class of which an Insured is an unnamed member is not a suit "brought or maintained by or on behalf of any Insured." Of course it is; a class action is brought by the named plaintiff or plaintiffs on his (their) own behalf *and* on behalf of the unnamed class members. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 550–52, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Sus-*

*man v. Lincoln American Corp.*, 587 F.2d 866, 869 (7th Cir.1978). Federal further argues that the "on behalf" language of the contract was not intended to apply to an unnamed or "passive" litigant. But in so arguing Federal is abandoning its primary argument, that the contract means what it says.

Maybe applying the contract's "or on behalf of any Insured" language to the case of the unnamed class member is so absurd that the language must bend. Or maybe not, because, as we'll see, the insurance contract requires allocation of covered and uncovered losses rather than barring all recovery because of the presence of an insured on the plaintiff's side of the case. (An argument, however, that Federal is reluctant to make, as we'll also see.) But even if the application of the "Insured versus Insured" exclusion to the unnamed class member would be too nutty to be tolerable as a contractual interpretation despite its literal accuracy, we do not think it follows that the rule barring coverage when an insured is suing another insured collapses into a standard that would require the district court to inquire into the collusive potential of the securities suit or the bitterness of the feelings between Pompliano and the defendants in that suit. It is one thing to carve a hard-edged exception, necessary to avoid absurdity, say for the case in which an "Insured" is an unnamed class member; it is another thing to replace the hard-edged rule of "Insured versus Insured" with a mushy, messy standard that would be hell for an insurance company to apply when asked to indemnify its insured. A rule plus exceptions is not the equivalent of a standard.

So we agree with the district court that Pompliano's claim was not covered. But Kiewit also argues that Federal is estopped to invoke the "Insured versus Insured" exemption because of delay in invoking it. Kiewit notified Federal shortly after Pompliano joined the securities suit of the new plaintiff, yet Federal said nothing about the exemption until two years later, when Kiewit settled the suit and sought indemnity from Federal. (Kiewit had defended and settled the suit itself; the contract did not call for the insurer to handle the defense.) Kiewit argues that had it known that Federal might invoke the "Insured versus Insured" exemption, it would have tried to get Pompliano's claim dismissed.

That is a pretty feeble argument, and for three reasons. The first is that Kiewit had every incentive to try to get Pompliano's claim dismissed regardless of insurance coverage, provided it was really defending against the securities suit and not taking a dive in the expectation of full coverage; and in the latter event it could not take advantage of an equitable doctrine like estoppel. *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 234 (1st Cir.1993) (defense of "unclean hands"); *Smith v. World Ins. Co.*, 38 F.3d 1456, 1462 (8th Cir.1994) (same). Second, reliance on acts or words or silences claimed to work an estoppel must be reasonable. E.g., *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Hawkins Construction Co. v. Reiman Corp.*, 245 Neb. 131, 511 N.W.2d 113, 117 (1994); *Curcio v. John Hancock Mutual Life Ins. Co.*, 33 F.3d 226, 235–37 (3d Cir.1994). Kiewit could read the insurance contract as well as Federal, and there, staring it in the face, was a clause that clearly barred coverage of Pompliano's claim. Had Federal told Kiewit that the clause did not apply to Pompliano for some reason, Kiewit might have been reasonable in relying on that assurance. *Heikes v. Farm Bureau Ins. Co.*, 181 Neb. 827, 151 N.W.2d 336 (1967); *Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 805 P.2d 70, 76 (1991). Might, not would; this was a sophisticated insured, quite able to read an insurance policy, and so the reasonableness of Kiewit's reliance would depend on the plausibility, in relation to the text, of the assurance given by Federal. *Principal Mutual Life Ins. Co. v. Charter Barclay Hospital, Inc.*, 81 F.3d 53, 57–58 (7th Cir.1996). Even then, Kiewit might not prevail. For (this is the third point) it is far from clear that Kiewit could have gotten Pompliano dismissed from the suit, and if it could not have, its reliance on Kiewit's assurances of coverage would not have cost it anything, and so wouldn't support a claim of estoppel. Reli-

ance must be detrimental, as the cases say. E.g., *Heckler v. Community Health Services of Crawford County, Inc., supra,* 467 U.S. at 59, 104 S.Ct. 2218; *State ex rel. Nebraska Health Care Ass'n v. Dept. of Health & Human Services Finance & Support,* 255 Neb. 784, 587 N.W.2d 100, 108 (1998); *Heller Int'l Corp. v. Sharp,* 974 F.2d 850, 860 (7th Cir.1992).

 But all this is an aside. Federal made no representations to Kiewit about the "Insured versus Insured" clause. And the doctrine of "mend the hold," which Kiewit also invokes, which prevents the defendant in a breach of contract suit from changing his position during the course of his dispute with the other party to the contract, *Herremans v. Carrera Designs, Inc.,* 157 F.3d 1118, 1123 (7th Cir.1998); *Harbor Ins. Co. v. Continental Bank Corp.,* 922 F.2d 357, 363 (7th Cir. 1990); *Cornhusker Agricultural Ass'n, Inc. v. Equitable General Ins. Co.,* 223 Neb. 618, 392 N.W.2d 366, 373 (1986); *O'Neil v. Union National Life Ins. Co.,* 162 Neb. 284, 75 N.W.2d 739, 744 (1956), especially when the contract is one of insurance, is inapplicable here because Federal did not change its position.

 There is another issue in the case, however, and here we part company with the district court. Pompliano and his coplaintiffs had similar claims in the securities fraud suit. Each was suing as a shareholder in the corporation that they claimed the defendants had defrauded; and we assume (a matter on which the record is strangely silent) that they shared in the settlement in proportion to their shareholdings. Pompliano had 16 percent of the shares and so presumably received 16 percent of the settlement, with the rest going to plaintiffs who were not "Insureds" within the meaning of the insurance contract. The coverage of their claims was not barred by the "Insured versus Insured" exemption. The contract, however, defines "Claim" as "a civil proceeding commenced by the service of a complaint or similar pleading," and the district court thought this meant that if any of the plaintiffs were Insureds, there was no coverage. This is not an outlandish interpretation. (There is no case law interpreting the con-

tractual provision from which the district judge could have taken his bearings.) The presence of an Insured in the litigation could conceivably contaminate the entire litigation, particularly if the insured were a current officer or director of the defendant *and* the principal plaintiff. But the contract deals with this problem in another way, by requiring allocation of covered and uncovered losses. If both sorts of loss occur "because a Claim against the Insured Persons includes both covered and uncovered matters, ... the Insureds and the [Insurance] Company shall use their best efforts to agree upon a fair and proper allocation of such amount between covered Loss and uncovered loss." Remember that a "Claim" is defined as a civil proceeding, here the securities fraud suit against Kiewit and one of its directors. The "Claim" so defined was against Insured Persons, but it included uncovered matters because one of the plaintiffs was an Insured, with the result that his part of the Claim was not covered by the insurance contract.

The contract may, as Federal argues, primarily contemplate a situation in which the suit for which indemnity is sought charges the insured with some wrongs that are covered by the insurance contract and some that are not, and damages are awarded for both sorts of wrong and have then to be allocated between the two groups. But a matter could be "uncovered" not because the policy excluded a particular type of act but because it excluded a particular type of claimant who had joined in the suit with persons whose claims were covered. That would be a suit against an Insured Person that involved uncovered as well as covered matters. Federal's contrary argument has no basis in the language of the contract (thus creating considerable tension with its argument that the "Insured versus Insured" exemption means what it says), and would produce the odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it. (Remember that Pompliano joined the suit against Kiewit months after it was filed.) And notice that the allocation provision automatically takes care of the case in which an Insured Person is the primary suitor; for in that case

the bulk of the judgment or settlement will be allocated to his part of the suit and the insurance company's exposure will be correspondingly reduced.

In summary, the judgment of the district court must be affirmed in part and reversed in part, and the case must be remanded for further consideration of the issue of allocation in conformity with this opinion. Presumably Kiewit is entitled to insurance proceeds equal to the amount of the settlement in the fraud case minus the amount that went to Pompliano. We are unclear what if any fraction of the litigation expenses incurred by Kiewit in that case should be deducted, since the presence of Pompliano as an additional (and late-added) plaintiff may not have increased those expenses.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.