In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 10-3839, 10-3856, 10-3883 & 10-3884

DWIGHT MILLER *et al.*,

*Plaintiffs-Appellants*,

*v.*

ST. PAUL MERCURY INSURANCE COMPANY,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 2:10-cv-02062—**Michael P. McCuskey**, *Judge.*

ARGUED MARCH 30, 2012—DECIDED JUNE 29, 2012

Before BAUER, POSNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Director and officer liability insurance policies commonly feature so-called insured vs. insured exclusions that exclude from coverage losses for claims brought by one "insured" against another "insured," often defined to include current and former corporate directors and officers as well as the corporation itself. The exclusion serves to limit moral hazard. Without such an exclusion, a D&O policy could require

the insurer to pay for the business mistakes of insured directors and officers if the corporation (also an insured) or if former officers or directors brought suit, collusive or otherwise, against them. Complications arise, however, when insured defendants are sued by a group of plaintiffs where some are insured and some are not, as in these appeals. Defendant St. Paul Mercury Insurance Company relied on the insured vs. insured exclusion in its D&O policy when it refused to defend or indemnify the insureds, Strategic Capital Bancorp, Inc. ("SCBI") and two of its former directors and officers, in a suit where only three of five plaintiffs joining in the complaint were insureds.

All parties to the underlying lawsuit joined forces as plaintiffs in this action against St. Paul to force it to defend and indemnify the defendants in the underlying lawsuit, or at least to cover a portion of defense costs and losses (the proportion pursued by plaintiffs who are not insureds) under the D&O policy's allocation provision. The district court agreed with St. Paul and held that the presence of insureds as plaintiffs in the underlying lawsuit meant that St. Paul had no duty to defend or indemnify any part of the lawsuit, including the claims brought by plaintiffs who are not insureds under the policy. The district court granted a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), finding that the plain language of the insured vs. insured exclusion barred coverage of the entire action where *any* plaintiff is an insured and that the allocation provision did not apply to a complaint that included any insureds as plaintiffs.

We affirm in part and reverse in part. We affirm the district court to the extent it held that St. Paul has no duty to defend or indemnify the claims brought by the three insured plaintiffs. We reverse in part and hold that St. Paul must defend and indemnify the claims brought by the two non-insured plaintiffs. In *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956 (7th Cir. 1999), we interpreted a very similar D&O policy to require an allocation of indemnity and defense costs where a lawsuit was brought by both insured and non-insured plaintiffs. Our holding from *Level 3 Communications* did not rest on extraneous factual circumstances, such as the proportion of damages sought by insured plaintiffs as opposed to non-insured plaintiffs, or the timing of the insured plaintiff's joinder in the suit.

## I. *Facts and Procedural History*

The D&O policy at issue here contains an insured vs. insured exclusion that removes the duty to defend or indemnify for "Loss on account of any Claim made against any Insured: . . . brought or maintained by or on behalf of any Insured or Company in any capacity . . . ." The allocation clause of the D&O policy provides:

> If on account of any Claim . . . the Insureds incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because the Claim includes both covered and uncovered matters, such amount shall be allocated between covered Loss and uncovered loss based upon the

relative legal exposures of the parties to covered and uncovered matters.

The dispute here concerns a lawsuit that we call the "*Miller* action" brought by five plaintiffs—Dwight Miller, Wells Anderson, Gene King, Teresa King, and Glenda L. Lane, as trustee of the Glenda L. Lane Trust. Those plaintiffs sued SCBI and two of the company's directors and officers, John Gorman and Gary Svec. In the state court complaint, each of the five plaintiffs asserted three claims against each defendant: fraud, civil conspiracy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. SCBI notified St. Paul of the *Miller* action and requested coverage of defense costs and indemnity coverage under the D&O policy issued by St. Paul to SCBI. St. Paul declined to advance defense costs or otherwise indemnify SCBI, citing the insured vs. insured exclusion as the sole basis for its denial of coverage.

Two plaintiffs in the Miller action (Miller and Anderson) are former directors of SCBI who are certainly insureds under the D&O policy. A third plaintiff, Glenda L. Lane as trustee of the Glenda L. Lane Trust, is also included in the definition. She is a beneficiary of the trust, so the trust is acting on her behalf, and she is an insured as a former director of SCBI. The two other plaintiffs in the Miller action, however, Gene King and Teresa King, were never directors or officers of SCBI and do not qualify as insureds under the policy.

The coverage issue was presented to the district court in two consolidated actions. SCBI moved at the outset

for a preliminary injunction that would have declared a duty to defend and indemnify under the policy. The district court denied the motion for a preliminary injunction, finding that SCBI was not likely to succeed on the merits of its claim. *Strategic Capital Bancorp Inc. v. St. Paul Mercury Ins. Co.*, 723 F. Supp. 2d 1053 (C.D. Ill. 2010). The district court later granted St. Paul's motion to dismiss, concluding that the "the plain language of the 'Insured vs. Insured' exclusion indicates that St. Paul has no duty to defend or to indemnify in civil proceedings brought or maintained by *any* Insured." The district court effectively barred coverage of both defense and indemnity coverage for the claims of all five plaintiffs in the *Miller* action based on the presence of insured plaintiffs.

II. *Discussion*

We review *de novo* the district court's interpretation of the insurance policy, which presents a question of law. *E.g.*, *First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 976 (7th Cir. 2007). Illinois law governs, although there is nothing unusual about the applicable state's law, as was true in *Level 3 Communications*, 168 F.3d at 957 (applying Nebraska law to a parallel insured vs. insured exclusion and policy). The general rule for insurance policies calls for liberal interpretation in favor of coverage, but "this rule of construction only comes into play when the policy is ambiguous." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). As we explain below, we can use common sense and the usual tools of contract interpretation to interpret the language in this policy without relying on the rule of ambiguity.

We address first and briefly the proper treatment of the Lane Trust as a plaintiff. We then turn to the principal issues, the scope of St. Paul's duty to indemnify and its duty to defend.

### A. *The Lane Trust*

All parties agree that two of the plaintiffs in the *Miller* action, Miller and Anderson, qualify as insureds and that two other plaintiffs, Gene King and Teresa King, do not. The dispute is over the status of the Lane Trust. Under the St. Paul D&O policy, the insured vs. insured exclusion extends to anyone who acts "on behalf of any Insured or Company in any capacity . . . ." We agree with the district court that the "distinction between Lane the individual and Lane the trustee of her namesake trust is not sufficient to remove her from the definition of an 'Insured.'" Lane is a beneficiary of the trust. As a former director of SCBI, she is also an insured. Applying the most basic concept of a trust, the Lane Trust acts "on behalf of" its beneficiaries, including Lane as an individual, when it pursues damages in the *Miller* action for the ultimate benefit of those beneficiaries. Otherwise it would be too easy to evade the insured vs. insured exclusion by having an insured merely assign her claims to a trust she controls. The Lane Trust is an insured under the policy.

### B. *St. Paul's Duty to Indemnify*

The central question is whether the insured vs. insured exclusion of this D&O policy bars coverage of a claim

brought by both insured and non-insured plaintiffs in the same lawsuit against another insured. Insured vs. insured exclusions are "standard" in D&O policies. *Level 3 Communications*, 168 F.3d at 957-58. They control the cost of D&O insurance by removing from coverage both "collusive suits — such as suits in which a corporation sues its officers or directors in an effort to recoup the consequences of their business mistakes, thus turning liability insurance into business-loss insurance"— as well as "suits arising out of those particularly bitter disputes that erupt when members of a corporate, as of a personal, family have a falling out and fall to quarreling." *Id.* at 958 (internal citations omitted).

The insured vs. insured exclusion in this case provides that St. Paul shall not be liable for "Loss on account of any Claim made against any Insured: . . . brought or maintained by or on behalf of any Insured or Company in any capacity," subject to several exceptions. It is clear that the insured vs. insured exclusion would operate to bar the entire action in a suit brought by only the plaintiffs who are insureds: Miller, Anderson, and the Lane Trust. It is equally clear that the insured vs. insured exclusion would have no effect in a suit brought by only the two non-insured plaintiffs, Mr. and Mrs. King. The question here is how to apply the policy when insured and non-insured plaintiffs join their individual claims in one lawsuit.

There are three possible answers, in broad terms. First, one might say that as long as at least one non-insured plaintiff is part of the lawsuit, the exclusion does not

apply and the insurer must indemnify any losses from the entire lawsuit. That rule would produce arbitrary results depending on whether insured plaintiffs did or did not have a non-insured plaintiff join in the same lawsuit. The rule would also make it easy for insured plaintiffs to evade the terms and purposes of the insured vs. insured exclusion by recruiting just one non-insured plaintiff to join an otherwise collusive or intra-mural lawsuit. No party advocates that answer here.

Second, one might say, as St. Paul argues, that if just one insured plaintiff is a party to a lawsuit, his presence taints the entire suit and there is no duty to indemnify any losses from any part of the lawsuit. St. Paul is willing to take this proposed rule to its logical limit, to bar coverage of an entire lawsuit brought by 99 non-insured plaintiffs and just one insured plaintiff. This rule also seems to invite arbitrary results depending on whether many people with similar claims file one con-solidated lawsuit or many separate lawsuits. Courts are hesitant to interpret contracts in ways that encourage an inefficient multiplication of parallel lawsuits.

In response to this concern, St. Paul argues that if a court consolidated separate complaints by insured and non-insured plaintiffs, the consolidation would mean there was no coverage for any of the claims. That rule would mean that a court's decision about case manage-ment would have major substantive and economic conse-quences. During oral argument, St. Paul went so far as to argue that even if separate complaints by insured and non-insured plaintiffs were merely consolidated for coordinated pretrial proceedings, as under the federal

multi-district litigation processes of 28 U.S.C. § 1407, they should also be considered a single claim and coverage would be barred. (As a fallback position, St. Paul argues for a majority rule that would base coverage decisions on either the proportion of insured to non-insured plaintiffs or the proportional amount of damages sought or obtained by each group. Either rule would invite equally arbitrary results.)

A third answer for a lawsuit with both insured and non-insured plaintiffs is the one we adopted in *Level 3 Communications*: apply the allocation clause of the D&O policy to provide indemnity for losses on claims by non-insured plaintiffs but not for losses on claims by insured plaintiffs. This answer minimizes the risk of arbitrary results and discourages efforts to manipulate the result by the ways in which individual claims happen to be combined or separated. This answer also has the advantage of conforming to the parties' reasonable expectations: the insurer owes no duty to indemnify for claims brought by insured plaintiffs but does owe that duty for claims brought by others. We conclude that this third answer is the correct one under the St. Paul D&O policy at issue here. To explain further, we review first our decision in *Level 3 Communications* and its application here. We then turn to St. Paul's efforts to distinguish *Level 3 Communications* from this case.

1. *Level 3 Communications*

In *Level 3 Communications Inc. v. Federal Insurance Co.*, 168 F.3d 956 (7th Cir. 1999), the issue was whether a D&O

policy's insured vs. insured exclusion barred coverage of a lawsuit by seven non-insured plaintiffs after one insured plaintiff joined the lawsuit six months later. We held that "the insurance contract requires allocation of covered and uncovered losses rather than barring all recovery because of the presence of an insured on the plaintiff's side of the case." *Id*. at 959. We ordered the insurer to pay the insured corporation an amount equal to the amount of the settlement in the fraud case minus the amount that was paid to the insured plaintiff. *Id.* at 961. We reached this result by applying the allocation clause of the policy to a "Claim," defined by the policy as "a civil proceeding commenced by the service of a complaint or similar pleading." *Id.* at 960. The insured vs. insured exclusion of the policy removed from liability "any 'Claim made against an Insured Person' if the Claim [was] 'brought or maintained by or on behalf of any Insured.'" *Id.* at 957.

With respect to allocation, we acknowledged that the presence of just one insured plaintiff in the underlying case "could conceivably contaminate the entire litigation, particularly if the insured were a current officer or director of the defendant *and* the principal plaintiff." *Id.* at 960. "But," we wrote, "the contract deals with this problem in another way, by requiring allocation of covered and uncovered losses." *Id*. Quoting the allocation provision, we explained: "If both sorts of loss occur 'because a Claim against the Insured Persons includes both covered and uncovered matters, . . . the Insureds and the [Insurance] Company shall use their

best efforts to agree upon a fair and proper alloca-
tion of such amount between covered Loss and uncov-
ered loss.' " *Id.* at 960.

The definition of the term "Claim" used in the insured
vs. insured exclusion did not prevent us from applying
the allocation clause to distinguish covered from uncov-
ered loss based on the status of a plaintiff as non-insured
and insured:

> Remember that a "Claim" is defined as a civil pro-
> ceeding, here the securities fraud suit against
> Kiewit [the corporation] and one of its directors. The
> "Claim" so defined was against Insured Persons, but
> it included uncovered matters because one of the
> plaintiffs was an Insured, with the result that his
> part of the Claim was not covered by the insurance
> contract.
>
> The contract may, as Federal argues, primarily
> contemplate a situation in which the suit for which
> indemnity is sought charges the insured with some
> wrongs that are covered by the insurance con-
> tract and some that are not, and damages are
> awarded for both sorts of wrong and have then to be
> allocated between the two groups. But a matter
> could be "uncovered" not because the policy ex-
> cluded a particular type of act but because it ex-
> cluded a particular type of claimant who had joined
> in the suit with persons whose claims were covered.
> That would be a suit against an Insured Person
> that involved uncovered as well as covered matters.

*Id.* We also noted the "odd result" that would have followed if we had adopted the insurer's contrary argument: "that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it." *Id.*

Finally, we explained that the allocation clause would take care of hypothetical cases in which insured plaintiffs play a more prominent role, such as when "an Insured Person is the primary suitor." *Id.* We suggested that courts interpreting similar policy language in the context of a more active insured plaintiff (that is, a "primary suitor") could maintain the integrity of the insured vs. insured exclusion by allocating the "bulk of the judgment or settlement . . . to [the insured's] part of the suit" and correspondingly reducing the exposure of the insurance company. *Id.* at 961.

The relevant terms of St. Paul's policy in this case are practically indistinguishable from those in the policy in *Level 3 Communications*. The insured vs. insured exclusion in *Level 3 Communications* excluded "liability on account of any 'Claim made against an Insured Person' if the Claim is 'brought or maintained by or on behalf of any Insured.'" 168 F.3d at 957. The exclusion here states: "The insurer shall not be liable for Loss on account of any Claim made against any Insured . . . brought or maintained by or on behalf of any Insured or Company in any capacity . . . ." The definition of a "Claim" in *Level 3 Communications* was "a civil proceeding commenced by the service of a complaint or similar pleading." 168 F.3d at 960. The definition of a "Claim" in the St. Paul policy is: "a civil proceeding against any

Insured commenced by the service of a complaint or similar proceeding." The allocation provisions are just as similar.[1]

The allocation provision of the St. Paul policy offers two avenues for allocating claims between covered and uncovered losses. If either the first or second portion applies, "such amount shall be allocated." The facts presented by this case fall within the terms of the second portion, italicized for emphasis here:

> If on account of any Claim the Insureds who are covered for such Claim under this Policy incur Loss jointly with others, including any Insureds who are not covered for such Claim under this Policy, or *the Insureds incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because the Claim includes both covered and uncovered matters*, such amount shall be allocated between covered Loss and uncovered loss based upon the relative legal exposures of the parties to covered and uncovered matters.

As in *Level 3 Communications*, the lawsuit that combines claims by insured and non-insured plaintiffs presents a "Claim" that includes both covered and uncovered matters, depending on the status of the different plaintiffs.

---

[1] In *Level 3 Communications*: "If both [covered and uncovered losses] occur 'because a Claim against the Insured Persons includes both covered and uncovered matters, . . . the Insureds and the [Insurance] Company shall use their best efforts to agree upon a fair and proper allocation of such amount between covered Loss and uncovered loss.'" 168 F.3d at 960.

The covered matters are the claims for damages by the non-insured plaintiffs. The uncovered matters are the claims brought by or on behalf of insured plaintiffs. Under the reasoning of *Level 3 Communications*, St. Paul owes a duty to indemnify its insureds for the claims brought by the non-insured Kings but not those brought by the insured Miller, Anderson, and Lane.

### 2. *Applying or Distinguishing Level 3 Communications*

To avoid this result, St. Paul argues we should limit our holding in *Level 3 Communications* based on two factual differences: timing and majority rule. Neither has a basis in the policy language, and we reject both proposed distinctions. First, St. Paul points out that the insured plaintiff in *Level 3 Communications* did not join the lawsuit until six months after it was filed. Our interpretation of the key policy language did not depend on the timing. Our reasoning was equally applicable to simultaneous claims by insured and non-insured plaintiffs. The late joinder in *Level 3 Communications* certainly highlighted how arbitrary the rule advocated by the insurer would be, but if we were to distinguish that case from this one based on that timing, we would be adopting an equally arbitrary rule that could be evaded easily by filing separate lawsuits or by having insured plaintiffs join lawsuits a few months (or weeks, or days?) after they were filed. Timing is not a valid distinction between this case and *Level 3 Communications*.

Second, St. Paul argues for a "majority rule" of sorts that would base coverage decisions in mixed cases like

this on either the number of or the proportion of damages claimed by insured plaintiffs as opposed to non-insured plaintiffs. Counting noses, we have three insured plaintiffs and two non-insured plaintiffs in this case. Counting the damages claimed, the three insured plaintiffs seek 81% of the total while the two non-insured plaintiffs seek 19%. This proposed additional requirement for a majority of non-insured claimants or dollars has no basis in the St. Paul policy language. It would also invite similarly arbitrary results, depending again on whether insured and non-insured plaintiffs filed separate or joint complaints.[2] What would happen if one or more plaintiffs settled so as to shift the balance one way or the other? And should the relevant majority be the number of claimants or the number of dollars? By contrast, the allocation provision in the St. Paul policy gives us a fairly clear answer: coverage is not all-or-nothing based on one of these (perhaps unstable) majorities.

---

[2] This potential for arbitrary results is apparent in St. Paul's effort to distinguish *Megavail v. Illinois Union Insurance Co.*, No. 05-1374-AS, 2006 WL 2045862 (D. Or. July 19, 2006), which followed our holding in *Level 3 Communications* and ordered partial coverage. St. Paul argues there is a bright line between the facts of *Megavail* and the facts presented here—"in that only two of the six plaintiffs were insured" in *Megavail*, as compared to three of five plaintiffs in this case. Under St. Paul's proposed nose-counting standard, a case brought by 99 insured and one non-insured plaintiff would not be covered, but neither would a case brought by 51 insured and 49 non-insured. This "majority rule" is arbitrary and has no basis in the policy language.

Coverage is allocated based on "the relative legal exposure of the parties to covered and uncovered matters."

In fact, the situation here was one we contemplated in *Level 3 Communications*, as a case in which the "primary suitor" would be an insured plaintiff whose claims would be excluded from coverage. Courts facing such cases could protect the insurer's expectations and enforce the insured vs. insured exclusion by allocating the bulk of a judgment or settlement to the insured's part of the underlying lawsuit. 168 F.3d at 960-61. We reject St. Paul's proposed majority rule for treating a lawsuit combining covered and uncovered claims as either completely covered or completely uncovered.

In proposing these factual distinctions that we reject, St. Paul has relied heavily on *Sphinx International Inc. v. National Union Fire Insurance Co.*, 412 F.3d 1224 (11th Cir. 2005). In that case, the Eleventh Circuit dealt with a lawsuit that combined claims of insured and non-insured plaintiffs similar to this case, but with very different policy terms. In *Sphinx International*, the primary plaintiff in the underlying suit was a former director of the company and thus an "insured" for purposes of the D&O policy. On the same day that the insured plaintiff filed a securities class action suit against Sphinx, he published a nationwide notice soliciting other Sphinx shareholders to join his suit. The former director then amended his complaint to add as plaintiffs the shareholders who accepted the invitation. *Id.* at 1225-26.

The policy language applied by the court in *Sphinx International* barred coverage of claims brought:

> By or at the behest of . . . any DIRECTOR or
> OFFICER . . . unless such CLAIM is instigated and
> continued *totally independent of, and totally without the*
> *solicitation of, or assistance of, or active participation of, or*
> *intervention of*, any DIRECTOR or OFFICER of the
> COMPANY or any affiliate of the COMPANY.

*Id.* at 1231 (emphasis added). Because the former director in *Sphinx International* actively solicited the other plaintiffs, the "plain and clear" language of the insured vs. insured exclusion barred the entire lawsuit. *Id.*

We have no disagreement with that reasoning, but we find no similar language in the St. Paul policy that would defeat coverage for a claim by a non-insured plaintiff depending on whether she acted independently of insured plaintiffs. A proper appreciation of the different policy language in the two cases is more than sufficient to support the Eleventh Circuit's ruling without reading into the decision any arbitrary limit on *Level 3 Communications*. In fact, the Eleventh Circuit made clear that it was "not saying that *Level 3 Communications* was wrongly decided," but that its facts, including the policy language, were "too dissimilar to our own to be decisive." *Id.*

Finally, St. Paul argues that *Level 3 Communications* should be distinguished because the St. Paul policy includes seven exceptions to the insured vs. insured exclusion. All seven exceptions provide coverage of certain claims brought entirely by insured plaintiffs. As an example, one of the exceptions extends coverage to a claim brought by a person who was a director or officer of the company more than six years ago (that is, an insured), so

long as the person brings the claim "without the solicitation, assistance or active participation" of a person who was a director or officer of the company within the last six years. St. Paul attempts to tease from these exceptions a general standard for deciding coverage issues based on the degree of involvement of insured plaintiffs in the suit. St. Paul contends that, by negative implication, the exceptions to the insured vs. insured exclusion bar coverage of an entire claim when it includes the "active" (as opposed to "passive") participation of any insured plaintiff, regardless of whether the other plaintiffs are insured or not.

The flaw in St. Paul's position is that it has no basis in its policy language. The exceptions to the insured vs. insured exclusion restore coverage for subsets of claims brought by insureds themselves. The exceptions provide no guidance on how to treat claims by non-insured plaintiffs who were never subject to the exclusion. St. Paul's argument here simply asks the courts to rewrite its policy to read more like the policy in *Sphinx International*. Our job of course is to interpret the policy language as written, not as a party wishes it had been written in hindsight.

For these reasons, we decline St. Paul's invitation to impose arbitrary limits on the reasoning of *Level 3 Communications*, whether based on the timing of the insureds' entry into the lawsuit, the proportion of damages sought by insureds, or the "active" versus "passive" involvement of the insureds. The allocation clause in the St. Paul policy leads to the proper result: claims brought

by or on behalf of insureds are excluded, while those brought by non-insureds are not. St. Paul has a duty to indemnify against losses to the non-insured plaintiffs.

### C.  *St. Paul's Duty to Defend*

Having resolved St. Paul's duty to indemnify, the final issue presented is St. Paul's duty to defend, which is distinct from the duty to indemnify under Illinois law. *Conway v. Country Casualty Ins. Co.*, 442 N.E. 2d 245, 247 (Ill. 1982). The "Duty of the Insureds to Defend" provision of the St. Paul policy provides in pertinent part, with emphasis added:

> *Subject to the Allocation section*, the Insurer shall advance, on behalf of the Insureds, Defense Costs which the Insureds have incurred in connection with Claims made against them, before disposition of such Claims, provided that to the extent that it is finally established that any such Defense Costs are not covered under this Policy, the Insureds, severally according to their respective interests, agree to repay the Insurer such Defense Costs.

The insured vs. insured exclusion in the policy applies to "All Loss," including defense costs. In their briefs, the plaintiffs argued that the duty to defend requires St. Paul to cover all defense costs, even that portion attributable to the defense of otherwise uncovered claims brought by insured plaintiffs. At oral argument, however, plaintiffs' counsel conceded that the allocation clause should be applied to defense costs in the same manner

as indemnity costs, thereby removing from coverage those defense costs brought by or on behalf of insured plaintiffs. We agree and hold that St. Paul has a duty to defend against only the claims of non-insured plaintiffs. St. Paul argues that it has no duty to defend against any of the claims, but its argument fails for the same reasons discussed above regarding its duty to indemnify. The allocation clause applies to the duty to defend and thus calls for an allocation of costs between covered and uncovered claims.

III. *Conclusion*

We AFFIRM the district court's decision in part, to the extent it held that St. Paul is not required to defend against or indemnify the claims by the insured plaintiffs, Miller and Anderson, or by the Lane Trust, which acts on behalf of an insured. We REVERSE the district court's decision in part and hold that St. Paul must defend against and indemnify the claims by the non-insured plaintiffs, the Kings. The case is REMANDED to the district court for further proceedings consistent with this opinion.