**Reversed and Remanded and Majority and Dissenting Opinions filed December 18, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-13-00492-CV

### ROBERT PRIMO, Appellant

### V.

### GREAT AMERICAN INSURANCE COMPANY, Appellee

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-64653**

## DISSENTING OPINION

I would hold that the trial court properly granted summary judgment on Primo's claims for Great American insurance policy proceeds because those claims are excluded, for two independent reasons, by the "insured v. insured" provision. Insured Briar Green assigned and transferred its rights against Primo, also an insured, to Travelers. Travelers had no other rights against Primo. So, the

underlying Travelers' suit against Primo was a suit (1) by one standing in the shoes of an insured against an insured; and (2) by one who succeeded to the interest of an insured against an insured. Because the Majority holds otherwise, I respectfully dissent.

### 1. The origins of "insured v. insured" exclusions.

Director and Officer ("D&O") insurance was originally designed to "protect the personal assets of the directors and officers of a company, not the company itself. Christopher W. Martin, *Director and Officer Insurance*, 41 Hous. Law. 38, 39–40 (Mar. / Apr. 2004). Over time, D&O insurers perceived insurance abuses; specifically, "friendly" suits brought by certain financial institutions against their own directors and officers seeking to recoup operating losses arising from business mistakes. *Id*. at 43; Michael Sean Quinn & Andrew D. Levin, *Directors' and Officers' Liability Insurance: Probable Directions in Texas Law*, 20 Rev. Litig. 381, 444 (Spring 2001). So, the insurers began including "insured v. insured" exclusions in policies. A typical "insured v. insured" exclusion states that the insurer is not liable for claims made against an officer or director or insured *by or on behalf of* another insured or by the company. *See, e.g.*, *Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871, 874–75 (7th Cir. 2012); *Levy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 889 F.2d 433 (2d. Cir. 1989). In other words, those insurers wanted to prevent the company from colluding with its officers to collect insurance benefits to cover business losses. *See, e.g.*, *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1229 (11th Cir. 2005).[1]

---

[1] A suit does not need to be collusive-in-fact to enforce the "insured v. insured" exclusion. *See, e.g.*, *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 168 F.3d 956, 958–59 (7th Cir. 1999) (noting that the plain language of the "on behalf of" language of the "insured v. insured" exclusion applies even to an unnamed class member or a "passive" litigant). To construe the "insured v. insured" exclusion solely to prevent a collusive suit is to "rewrite the insurance contract to enlarge the risk of the insurer." *See Foster v. Ky. Hous. Corp*, 850 F. Supp. 558, 561 (E.D. Ky. 1994); *accord Sphynx Int'l*, 412 F.3d at 1229. Therefore, a

***2. Does an insured's assignment of its claims against another insured restore coverage where the exclusion eliminates it?***

No, it does not. The "insured v. insured" exclusion applies when the insured, whose claim would be excluded from coverage, assigns its claim against its co-insured to a third party. *See Niemuller v. Nat'l Union Fire Ins. Co of Pittsburgh, PA.*, No. 92 Civ. 0070 (SS), 1993 WL 546678, at *3 (S.D.N.Y. 1993) (Sotomayor, J.) (rejecting the "unconvincing" argument that the explicit "by" language of the exclusion clause does not apply because the insured assigned its claim to a non-insured).[2] The court in *Niemuller* reasoned that under "well-established principles of assignment law . . . an assignee steps into the shoes of the assignor and gains only so much as that to which the assignor is entitled." *Id.*

Such well-established principles of assignment law apply in Texas, as well. Under Texas common law, an assignee stands in the shoes of his assignor. *See Sw. Bell Tele. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) (citing *FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993)). An assignee can recover either in his own name or in that of the assignor. *Tex. Mach. & Equip. Co. v. Gordon Knox Oil & Exp. Co.*, 442 S.W.2d 315, 317 (Tex. 1969). The assignment "operates to transfer only such right, title or interest as is possessed by the assignor at the time of the assignment and no more." *Sw. Bell Tele. Co. v. Ace Transp., Inc.*, No. 14-97-00371-CV, 1998 WL 831577, at *2 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (not designated for publication). Thus, Travelers had no

---

trial court need not assess whether the claim at issue is actually or potentially collusive. *See Level 3 Commc'ns*, 168 F.3d at 959.

[2] *See also* David E. Bordon & Ellen B. Van Vechten, 4 *Law and Practice of Insurance Coverage Litigation* § 47:33 (2008) ("Courts have held that an insured versus insured exclusion bars coverage for claims by assignees of the insured."); Catherine E. Vance & Geoffrey L. Berman, *Last in Line: Do 'Insured vs. Insured' Exclusions Apply to Assignees in Assignments for the Benefit of Creditors?*, 23 Am. Bankr. Inst. J. 12, 34 (Feb. 2004) ("An ordinary contract assignee is undoubtedly bound by insurance policy exclusions, including insured vs. insured clauses.").

greater legal rights against Primo than did Briar Green. *See John H. Carney & Assocs. v. Tex. Prop. & Cas. Ins. Guar. Ass'n*, 354 S.W.3d 843, 850 (Tex. App.—Austin 2011, pet. denied); *Houchins v. Scheltz*, 590 S.W.2d 745, 751 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ), *overruled on other grounds by Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 n.2 (Tex. 1991). And, the face of the Travelers' pleading confirms that Travelers' sought relief for wrongs alleged by Primo against Briar Green—not Travelers.

Like the insurance policy in *Niemuller*, the Great American D&O policy excludes "any Claim made against any Insured . . . . by . . . [Briar Green]." It is undisputed that the "insured vs. insured" exclusion would have applied if Briar Green had filed the employee dishonesty claim against Primo. And, it is undisputed that Travelers is an assignee. Under well-established Texas law, Travelers stepped into the shoes of Briar Green and, without regard to any other exclusionary language within the policy, the suit Travelers filed against Primo was a suit *by Briar Green*.[3] The trial court correctly granted summary judgment.

---

[3] The Majority urges that we are unable to affirm on the basis that "by" in the unambiguous contract embraces an assignee because Great American did not argue this interpretation of the contract. On appeal from a summary judgment, we consider all grounds presented to the trial court. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). "The term 'grounds' means the reasons that entitle the movant to summary judgment, in other words, 'why' the movant should be granted summary judgment." *Garza v. CTX Mort. Co., L.L.C.*, 285 S.W.3d 919, 923 (Tex. App.—Dallas 2009, no pet.). One of the grounds Great American alleged for why it was entitled to summary judgment was that the unambiguous language of the Insured v. Insured exclusion in the policy at issue barred the claim as a matter of law. As an appellate court, reviewing a summary judgment on contract interpretation, we are not bound by the interpretation assigned by the parties; instead, we independently determine the intent of the parties as shown by the written instruments. *See City of Bunker Hill Village v. Mem'l Villages Water Auth.*, 809 S.W.2d 309, 310-11 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that the court was not bound by the parties' agreement that contracts were unambiguous and holding that contracts were ambiguous).

***3. Did the contracting parties intend for "succeeds to the interest" to mean corporate successor?***

No, they unambiguously did not. The "insured v. insured" exclusion applies even when someone other than the insured, whose claim would be excluded from covered, "succeeds to the interest" of the insured.

"Succeeds to the interest" is not defined in the policy. "Succeeds to the interest" is not a phrase used elsewhere in the policy. The intent of the parties is nonetheless evident from the remaining language of the policy.

Section III of the policy defines those insureds for which coverage attaches:

1. the Organization [Briar Green Condominium Assoc.],"

2. "any Subsidiary," defined as "any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the Organization has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity, or any other entity added as a Subsidiary by written endorsement to this Policy"; and

3. "all Insured Persons," defined as "all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of the Organization or its Subsidiaries, including any executive board members and committee members whether salaried or not."

Section IV, entitled "Exclusions," provides a laundry list of "Claims made against any Insured" to which the policy does not apply. The subject exclusion, H, covers "[c]laims made against any Insured by, or for the benefit of, or at the behest of the Organization or a Subsidiary or any entity which controls, is controlled by, or is under common control with the Organization or a Subsidiary, or any person or entity which succeeds to the interest of the Organization or a Subsidiary."

5

A provision of Section VIII, the General Conditions, is also pertinent. Paragraph D, entitled "Conversion to Run-Off Coverage," states: "If prior to the end of the Policy Period, another organization acquires substantially all of the assets of the Organization, or the Organization merges into another organization, or the Organization ceases to qualify as a not-for-profit organization under the Internal Revenue Code," the Organization must give the specified written notice and coverage is temporally limited.

The foregoing language reflects the parties' intent in two important ways. First, the parties distinguished between an "entity which succeeds to the interest of the Organization or a Subsidiary" and "another organization [that] acquires substantially all of the assets of the Organization." Thus, when the parties intended a circumstance in which the Organization "transfer[red] substantially all of the assets," they said it.

Second, the parties distinguished between "succeeds to the interest" and merger. In Texas, a merger is a corporate transaction in which the successor organization continues the operation of the prior entity and acquires both rights and liabilities in the transfer. *See In re Cap Rock Elec. Coop., Inc.*, 35 S.W.3d 222, 227–229 (Tex. App.—Texarkana 2000, no pet.). We know that the parties said "merger" when they meant merger. Thus, the parties did not mean merger or successor organization when they used the term "succeeds to the interest." Because the parties did not use the term "successor in interest," we have no need to construe this unambiguous insurance policy by resort to our court's authority interpreting language that the parties did not agree upon.[4]

---

[4] Even if the contracting parties had chosen the word "successor," the Majority's reliance upon our decision *Augusta Court Co-Owners' Assoc. v. Levin, Roth & Kasner, P.C.*, 971 S.W.2d 119 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), fails to take into account our cautionary language: "The exact meaning of the word 'successor," when used in a contract depends largely on the kind and character

6

Nothing in the policy at issue suggests that "successor in interest," as applied to corporate transactions is what the parties intended by the word "succeeds." The language of the exclusion is purposefully broad: "by, or for the benefit of, or at the behest of." The language applies not only to an entity that succeeds to the Organization's interest, but also "any person" who succeeds to that interest. To substitute "successor in interest" for the chosen language narrows its application. The exclusion, as the Majority rewrites it, does not apply unless the claim against the insured is brought by an entity to whom the Organization or its subsidiary has fully transferred every asset and every liability. And, the rewritten exclusion virtually writes out "any person." Under this "corporate transaction" analysis adopted by the Majority, the very purpose of an "insured v. insured" exclusion—that is, to prevent collusion—is eliminated from this insurance policy.

Instead, the plain meaning of the word "succeed" is "[t]o come next after and take the place of another, either by descent, election, or appointment in a position of rule or ownership," or "[t]o follow (another) in ownership or in the occupation of a position or office." THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 3134 (1971). In particular, "succeed to" means "[t]o fall heir to, inherit, come into possession of." *Id.* It is undisputed on this record that Travelers was, upon assignment, the rightful owner of Briar Green's interest in the claim filed against Primo. For this independent reason, the trial court correctly granted summary judgment.

I would affirm.

/s/     Sharon McCally
Justice

Panel consists of Justices McCally, Busby, and Donovan. (Busby, J., majority).

---

of the contract, its purposes and circumstance, and context." *Id* at 125. The Majority does not discuss these contextual factors.