# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3324
_____

Jerry's Enterprises, Inc.

*Plaintiff - Appellant*

v.

U.S. Specialty Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 18, 2016
Filed: January 11, 2017

_____

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jerry's Enterprises, Inc. ("JEI") brought a breach of contract and declaratory judgment action against its liability insurance carrier, U.S. Specialty Insurance Company ("U.S. Specialty"). The conflict concerned the insurance carrier's refusal to indemnify JEI for the settlement of a lawsuit. U.S. Specialty argued that the underlying suit, brought by a former director of JEI, was excluded from coverage by

language in the directors' and officers' liability insurance policy. On cross-motions for summary judgment, the district court[1] ruled in favor of U.S. Specialty. We note jurisdiction over this final order of the lower court, see 28 U.S.C. § 1291, and affirm.

## I. Background

### A. Facts

In 1950, Jerry Paulson founded JEI as a small butcher shop in Edina, Minnesota. Over the decades, JEI came to operate a score of retail and grocery stores in Minnesota, Wisconsin, and Florida. The closely held family company now employs approximately 4,000 employees. As he grew the business, Jerry Paulson gifted non-voting shares in JEI to his three daughters, including Cheryl Sullivan. He also gifted shares to his grandchildren, including Sullivan's daughters Kelly and Monica. Paulson established an estate plan that, upon his death, appointed his daughters as members of the JEI Board of Directors. They would remain as directors until such time as their shares, and those of his grandchildren, were redeemed.

Jerry Paulson died on April 5, 2013. In accordance with Paulson's estate plan, Sullivan became a director of JEI in April, and she held that position until August, when her shares were redeemed. At that time, Cheryl Sullivan owned 28.06% of all outstanding company shares, while Kelly and Monica owned 2.4% and 1.2%, respectively. During her stint as a company director, Sullivan raised a number of concerns with directors of JEI in regards to how her shares were being valued. These concerns were never addressed to her satisfaction.

---

[1] The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

As a result, Sullivan and her daughters filed suit against JEI, alleging multiple acts of misconduct by JEI directors designed to lower the value of their shares. The complaint contained claims for declaratory judgment, breach of fiduciary duty, aiding and abetting tortious conduct, equitable relief under Minnesota common and statutory law, breach of contract, civil conspiracy, and preliminary and permanent injunctive relief. All claims were brought jointly by all three plaintiffs. After several months of negotiation, JEI reached a confidential settlement agreement with Sullivan and her daughters. When JEI sought coverage for its defense costs and for sums paid under the settlement agreement, U.S. Specialty refused to pay.

## B. The Insurance Policy

JEI held a directors' and officers' liability insurance policy—Policy No. 14-MGU-12-A27558—through U.S. Specialty. Under the policy, U.S. Specialty agreed to "pay to or on behalf of the Insured Persons [or the Insured Organization] Loss arising from Claims first made against them during the Policy Period or Discovery Period (if applicable) for Wrongful Acts." (Appellant App. 32.) There is no dispute that the Sullivan lawsuit is a claim made during the policy period for wrongful acts. The policy defines Insured Person as "any past, present or future director, officer, managing member, manager or Employee of the Insured Organization . . . ." (Appellant App. 34.) Claim is defined, in relevant part, as "any civil proceeding commenced by service of a complaint or similar pleading." (Appellant App. 32.)

Aside from these particular definitions, JEI's insurance policy contains two other provisions significant to this appeal. The first is the "Insured vs. Insured" exclusion. This provision excludes from coverage under the policy any claim:

[B]rought by or on behalf of, or in the name or right of . . . any Insured Person, unless such Claim is:

-3-

(1)    brought and maintained independently of, and without the solicitation, assistance or active participation of . . . any Insured Person . . . .

(Appellant App. 69.)

The second significant provision of JEI's policy is the allocation clause. This clause deals with a lawsuit involving both covered and uncovered loss in the following way:

> If Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim, either because the Claim includes both covered and uncovered matters, or because the Claim is made both against Insureds and against others not included within the definition of Insured, the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts . . . .

(Appellant App. 42.)

## C. Procedural History

After repeated communications between the parties, in which U.S. Specialty steadfastly refused to extend coverage for the Sullivan settlement and related defense costs, JEI filed this action in Minnesota state court. U.S. Specialty subsequently removed the case to federal district court, which had diversity jurisdiction pursuant to 28 U.S.C. § 1332. JEI's suit alleged claims of breach of contract, declaratory judgment, and estoppel. Both parties filed motions for summary judgment in the district court, raising three primary issues. First, whether Cheryl Sullivan qualified as an Insured Person under the insurance policy. Second, whether the Insured vs. Insured exclusion applied to Cheryl Sullivan's claims. Third, whether the Insured vs. Insured exclusion applied to the claims brought by Sullivan's daughters.

-4-

The district court ruled in favor of U.S. Specialty on each issue. It found that the plain language of the insurance policy qualified Cheryl Sullivan as an Insured Person and so the Insured vs. Insured exclusion applied to her claims. The court also held that the exclusion applied to the claims brought by Sullivan's daughters. On this last point, the court's reasoning centered on the nature of the suit. Each and every claim of the suit was brought jointly by Sullivan and her daughters. Therefore, since the Insured vs. Insured exclusion allows coverage only for claims asserted by Insured Persons if they are brought independently and without the active participation of the Insured Person, the claims brought by Sullivan's daughters were not subject to coverage under the policy.

JEI appeals this last ruling of the district court on the issue of coverage for the claims brought by Sullivan's daughters.

## II. Discussion

"We review de novo 'the district court's interpretation of the terms of the insurance policy and its' summary judgment decisions." Oakdale Mall Assocs. v. Cincinnati Ins. Co., 702 F.3d 1119, 1122 (8th Cir. 2013) (quoting Corn Plus Coop. v. Cont'l Cas. Co., 516 F.3d 674, 678 (8th Cir. 2008)). We will uphold a grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The interpretation of an insurance contract is a question of law. Midwest Family Mut. Ins. Co. v. Wolters, 831 N.W.2d 628, 636 (Minn. 2013). "Because this case is in federal court based on diversity jurisdiction, Minnesota's substantive law controls our analysis of the insurance policy." Corn Plus, 516 F.3d at 678 (citation omitted).

"We must predict how the Supreme Court of Minnesota would rule" if this issue came before it. Neth. Ins. Co. v. Main St. Ingredients, LLC, 745 F.3d 909, 913

(8th Cir. 2014) (citation omitted). "Under Minnesota law, the insured bears the initial burden of establishing that coverage exists, at which point the insurer then carries the burden of demonstrating that a policy exclusion applies." Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 951 (8th Cir. 2012) (citing Travelers Indem. Co. v. Bloomington Steel & Supply Co., 718 N.W.2d 888, 894 (Minn. 2006)). If the insurer succeeds, the burden shifts back to the insured to show that an exception to the exclusion applies. Wolters, 831 N.W.2d at 636.

General contract principles apply to the construction of an insurance policy under Minnesota law, and we must interpret the policy to effect the intentions of the parties. See Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). "An insurance policy 'must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning.'" Wolters, 831 N.W.2d at 636 (quoting Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 652 (Minn. 1986). "Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations." Id. But we will not read ambiguity into the plain language of an insurance policy. "The courts 'must fastidiously guard against the invitation to create ambiguities where none exist.'" Oakdale Mall, 702 F.3d at 1122 (quoting Latterell v. Progressive N. Ins. Co., 801 N.W.2d 917, 921 (Minn. 2011)).

## A. The Insured vs. Insured Exclusion

We turn first to the actual language of the exclusion clause. The language itself, as it applies to this case, is straightforward: "the Insurer will not be liable to make any payment of Loss in connection with a Claim brought by . . . any Insured Person." The policy defines Claim, in relevant part, as "any civil proceeding commenced by service of a complaint." Finally, an Insured Person includes any past director. In essence, therefore, the Insured vs. Insured exclusion bars coverage for any lawsuit brought by a former director. An exception exists if the lawsuit is brought independently of the former director, and without their active participation.

-6-

Under these circumstances, the exclusion does not apply and coverage is restored for the lawsuit.

Application of the exclusion to the present case demonstrates that U.S. Specialty does not owe coverage to JEI. Cheryl Sullivan is, JEI concedes, an Insured Person under the policy due to her brief time as a director of JEI's board. Her lawsuit was a civil proceeding commenced by service of a complaint—in other words, a Claim. She (along with her two daughters) brought the lawsuit against JEI. Our conclusion seems inescapable: loss associated with the Sullivan lawsuit is not covered under the insurance policy due to the presence of a former director—Sullivan—as an active participant.

JEI objects to this seemingly straightforward application of the exclusion clause. According to JEI, a fundamental principle of Minnesota insurance law is that exclusion clauses are to be "narrowly considered" and construed "in favor of the insured." Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009); Safeco Ins. Co. v. Lindberg, 380 N.W.2d 219, 222 (Minn. Ct. App. 1986); see also Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 613 (Minn. 2001) ("We . . . construe exclusions strictly against the insurer."). The Minnesota Supreme Court, JEI continues, would narrowly construe the exclusion clause to allow for coverage of loss associated with the claims of Sullivan's daughters, who, after all, are not Insured Persons under the policy.

JEI's argument exhibits a fundamental misunderstanding of the insurance policy and our role in analyzing the policy's language. The cases cited by JEI pertain to insurance policies with readily apparent ambiguities. See Walser, 628 N.W.2d at 609 (relevant language not defined in the policy); Lindberg, 380 N.W.2d at 221-22 (an exclusion not clearly identified in the policy). Here, the exclusion clause contains no ambiguity, and we must not read ambiguities into its language. See Oakdale Mall, 702 F.3d at 1122. JEI and U.S. Specialty entered into an agreement in which they

defined the terms of that agreement. It is our responsibility to give effect to that contracted language. See Thommes, 641 N.W.2d at 879. JEI's repeated references to the separate claims of Sullivan and her daughters betray the language as actually contracted by the parties. A claim is not afforded its ordinary meaning under the insurance policy. Rather, the policy defines Claim as a civil proceeding commenced by service of a complaint, i.e. the entirety of the Sullivan lawsuit. U.S. Specialty, therefore, need only show that the exclusion clause applied to the lawsuit as brought. It has done so. We have no room under the language of the exclusion clause to apply the clause to some parts of a lawsuit but not others.

## B. The Allocation Clause

JEI next presents a fallback position: loss suffered in the Sullivan lawsuit should be allocated, pursuant to the allocation clause, between covered and uncovered matters, resulting in payment for settlement of claims solely attributable to Sullivan's daughters. The insurance policy's allocation clause reads: "If Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim . . . because the Claim includes both covered and uncovered matters . . . the Insureds and Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts . . . ." In other words, if a lawsuit includes both covered and uncovered matters, U.S. Specialty owes coverage for those matters that are covered under the insurance policy. No Minnesota court or Eighth Circuit panel has reviewed this kind of clause in an insurance contract; the parties instead direct our attention to three out-of-circuit cases analyzing the issue of allocation.

In Level 3 Communications, Inc. v. Federal Insurance Co., 168 F.3d 956 (7th Cir. 1999), the Seventh Circuit first faced the issue of insurance policy allocation clauses. The policy in that case contained an exclusion clause precluding coverage for any "Claim made against an Insured Person" when the Claim was "brought or maintained by or on behalf of any Insured." Id. at 957. The underlying suit against

-8-

Level 3 was a securities action that settled out of court. One of the eight plaintiffs was a former company director who joined the suit six months after it had been filed. Id. The Seventh Circuit quickly concluded that "the contract clearly excludes coverage for the part of the settlement . . . allocable to [the former director]." Id. at 958. But the issue of coverage for the rest of the settlement gave the court pause. It expressed concern for a potentially "whacky result"—that a former director could be an unnamed member of a multimillion dollar class action, with a personal stake of only $10, and thus defeat insurance coverage for the entire suit. Id. This would transform a suit from one entirely covered by insurance when filed into one wholly uncovered when later joined by an Insured Person. Id. at 960. Finding this potential outcome discomforting, the court looked to the policy's allocation clause. With language nearly identical to that in JEI's allocation clause, the Level 3 court ultimately allocated loss between covered and uncovered matters in the underlying lawsuit, reasoning that "a matter could be 'uncovered' . . . because it excluded a particular type of claimant who had joined in the suit with persons whose claims were covered." Id.

The Eleventh Circuit reached the opposite result in Sphinx International, Inc. v. National Union Fire Insurance Co., 412 F.3d 1224 (11th Cir. 2005). Sphinx also involved a securities action brought by a group of plaintiffs, one of whom was a former director of the company. Id. at 1226. Unlike the former director in Level 3, this former director was the driving force of the lawsuit; he brought the original suit on his own, adding additional plaintiffs only later in the litigation process. Id. When Sphinx sought coverage for the lawsuit from its insurance provider, the provider denied coverage based on the Insured vs. Insured exclusion. Id. The exclusion barred coverage for any Claim brought by a former director "unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of" that former director. Id. Sphinx argued that coverage should be allocated between the former director's uncovered loss and the other covered losses. Id. at 1230. The Eleventh Circuit

rejected this argument. The court distinguished Level 3 in two ways. First, the former director in Level 3 was a passive shareholder who joined a larger suit, in contrast to this former director who "*brought* the lawsuit and *recruited* every other plaintiff." Id. at 1231. Second, the language in Sphinx's exclusion clause was materially different than the one in Level 3; specifically, the exclusion clause in Sphinx contained an elaborate assistance exception that would act to restore coverage if the former director did not actively participate in the lawsuit. Id. Level 3 contained no such assistance exception. The court therefore held, "While the language in Level 3 Communications gave the court some wiggle room, the language in our case is plain and clear, compelling our conclusion that [the insurer] need not cover Sphinx for [the underlying] lawsuit." Id.

The Seventh Circuit revisited the issue of an insurance policy's allocation clause in Miller v. St. Paul Mercury Insurance Co., 683 F.3d 871 (7th Cir. 2012). In Miller, five plaintiffs, including two former company directors, brought suit against the company and its directors. Id. at 873. The company's insurance provider refused to indemnify, citing the policy's Insured vs. Insured exclusion. Id. The court reaffirmed its holding in Level 3, but then turned its attention to the Eleventh Circuit's reasoning in Sphinx. Id. at 876-79. The Miller court noted the inclusion of an assistance exception in Sphinx's exclusion clause, whereas both Level 3 and Miller involved exclusion clauses containing no exceptions. Id. at 879. "A proper appreciation of the different policy language in the two cases is more than sufficient to support" the differing results. Id.

After considering these cases for the persuasive authority they offer, we hold that the allocation clause does not restore coverage for any part of the Sullivan lawsuit. Like the former director in Sphinx, Cheryl Sullivan was the driving force of the litigation. She owned the vast majority of shares at issue in the underlying lawsuit, and she was the former director who repeatedly raised concerns about the valuation of shares to JEI's board of directors. She then brought the suit as one of the

original plaintiffs, unlike <u>Level 3</u>'s passive shareholder who joined the lawsuit six months after it had been filed.

The presence of an assistance exception both alleviates the concerns expressed in <u>Level 3</u> and distinguishes the present case from those decided by the Seventh Circuit. The <u>Level 3</u> court made its decision, in part, out of a concern for a class-action lawsuit otherwise covered under an insurance policy, rendered uncovered due to the presence of an Insured Person as an unnamed class member, even though that Insured Person's personal stake in the suit was de minimis. <u>See</u> <u>Level 3</u>, 168 F.3d at 958. The assistance exception in JEI's insurance policy prevents such an outcome. The exception allows for coverage as long as the Insured Person did not solicit, assist, or actively participate in the lawsuit. This language, also found in <u>Sphinx</u>, does not appear in the insurance policies analyzed by the Seventh Circuit in <u>Level 3</u> and <u>Miller</u>. As the <u>Miller</u> court intimated, an appreciation of the differing policy language supports our conclusion that the allocation clause does not restore coverage for a suit brought with the active participation of an Insured Person.

We here acknowledge the tension that exists between the Insured vs. Insured exclusion and the allocation clause. We also recognize that, of the cases we have analyzed, <u>Level 3</u> and <u>Miller</u> both had allocation clauses but no assistance exception whereas <u>Sphinx</u> involved an assistance exception but no allocation clause. So, the persuasive authority offered by these cases is limited. JEI has presented various arguments for allocating loss among the claims of Cheryl Sullivan and her daughters despite the presence of the assistance exception, and these arguments are not wholly without merit. But ultimately, two principles of Minnesota contract law counsel us to rule in favor of U.S. Specialty. First, applying the allocation clause to the Sullivan claim would render the assistance exception superfluous, effectively reading that exception out of the contract. <u>See</u> <u>PowerSports, Inc. v. Royal & Sunalliance Ins. Co.</u>, 307 F. Supp. 2d 1355, 1362 (S.D. Fla. 2004). That we cannot allow. <u>See</u> <u>Henning</u>, 383 N.W.2d at 652 (insurance policies must be construed as a whole). Our holding,

on the other hand, does not read the allocation clause out of the contract. It simply limits the reach of the allocation clause when more specific language exists elsewhere in the contract. Second, a basic principle of Minnesota contract law instructs courts to make specific contract language controlling over general language. See Bank Midwest v. Lipetzky, 674 N.W.2d 176, 181 n.8 (Minn. 2004) ("[C]ontract construction compels us to determine that the more specific language takes precedence over the more general language . . . ."). Here, the Insured vs. Insured exclusion speaks directly to lawsuits brought with the participation of Insured Persons. The allocation clause speaks generally to any claim brought with covered and uncovered matters. The exclusion clause controls.

### III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment to U.S. Specialty.

_____