# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3567
_____

RSUI Indemnity Company

*Plaintiff - Appellant*

v.

New Horizon Kids Quest, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2019
Filed: August 12, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

New Horizon Kids Quest, Inc. ("New Horizon"), operates a childcare facility at the Grand Casino Mille Lacs in Onamia, Minnesota. In 2011, the guardian of J.K. sued New Horizon, alleging that negligent employee training and supervision resulted in J.K., then age three, suffering physical and sexual assaults by N.B., then age nine, when the two children were under New Horizon's care. At the time of the incident, commercial general liability and excess liability policies issued by Travelers Property

Casualty Company of America ("Travelers") provided New Horizon $3,000,000 of liability coverage for insured occurrences. A Commercial Excess Liability Policy issued by RSUI Indemnity Company ("RSUI") provided additional excess liability coverage of up to $8,000,000 per occurrence. The RSUI policy included a Sexual Abuse or Molestation Exclusion.[1]

Travelers as New Horizon's primary insurer accepted defense of J.K.'s suit. Prior to trial, New Horizon conceded liability but disputed "the nature, type and extent" of J.K.'s injuries and damages. Following trial, the jury awarded J.K. more than $13 million, but the trial court granted New Horizon's motion for a new trial. Following a second trial at which New Horizon again conceded liability but contested J.K.'s claims of injuries and damages, the jury awarded total damages of $6,032,585, segregating its award into four damage categories but not finding whether J.K. suffered sexual as well as physical abuse and not allocating its award between those two claims. Travelers paid its policy limits, plus interest. New Horizon paid the remaining $3,224,888.59 and demanded indemnity from RSUI under its excess liability policy. RSUI then brought this action seeking a declaratory judgment that the policy's "Sexual Abuse or Molestation" exclusion barred coverage for that part of the award above Travelers' policy limits.

The district court granted summary judgment for New Horizon, concluding that RSUI could not prove that any part of the jury's unallocated award was based on sexual assault subject to the policy's exclusion. RSUI appeals. We review de novo the district court's interpretation of an insurance policy and its grant of summary judgment; Minnesota substantive law controls this diversity action. Jerry's Enters., Inc. v. U.S. Specialty Ins. Co., 845 F.3d 883, 887 (8th Cir. 2017). We conclude that

---

[1]The exclusion defined "sexual abuse or molestation" to mean "physical, mental or moral harassment or assault of a sexual nature against any person," and included within the exclusion negligent employment, supervision, or retention of a person whose conduct fell within the exclusion.

RSUI, an excess liability insurer that did not control the defense of its insured in the underlying suit, must be afforded an opportunity to prove in a subsequent coverage action that the jury award included damages for uncovered as well as covered claims. If the insurer sustains that burden, the district court must then allocate the award between covered and uncovered claims. Accordingly, we reverse and remand for further proceedings.

## I.

We begin with basic principles under Minnesota insurance law. "The insured bears the initial burden of proving prima facie coverage of a third-party claim under a liability insurance policy. If the insured meets its burden of establishing coverage of the claim, the burden shifts to the insurer to prove the applicability of an exclusion under the policy as an affirmative defense." Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co, 819 N.W.2d 602, 617 (Minn. 2012) (citation omitted). The insured's primary insurer -- here, Travelers -- has both a duty to indemnify covered claims and a broader duty to defend its insured in the third party's action. A primary insurer who accepts the duty to defend, but reserves the right to contest its duty to indemnify, may bring a separate declaratory judgment action to determine coverage while the third party action is pending,[2] or it may seek to have the jury make findings in the third party action to resolve coverage issues. See, e.g., Prahm v. Rupp Const. Co., 277 N.W.2d 389, 391 (Minn. 1979). If the primary insurer refuses to defend the third party action, even improperly, and the insured brings a coverage action seeking indemnity for a judgment in the third party's favor, whether the third party claim was covered by the policy is an issue the insurer is "entitled to litigate." Brown v. State Auto. & Cas. Underwriters, 293 N.W.2d 822, 825 (Minn. 1980).

---

[2]However, "[w]here the question to be resolved in the declaratory judgment action between an insurer and an insured will be decided in the main action, it is inappropriate to grant a declaratory judgment." Grain Dealers Mut. Ins. Co. v. Cady, 318 N.W.2d 247, 250 (Minn. 1982).

An award entered against the insured may include sums for which it is entitled to be indemnified under the policy, and sums for claims not covered by the policy. If the evidence in a post-award coverage action establishes that the third party action included both covered and uncovered claims, then the total award must be allocated, by the court in the coverage action if necessary. See Remodeling, 819 N.W.2d at 618-19 & n.4; Duke v. Hoch, 468 F.2d 973, 984 (5th Cir. 1972); UnitedHealth Group Inc. v. Columbia Cas. Co., 941 F. Supp.2d 1029, 1033-34 (D. Minn. 2013). If the insurer accepted defense of the third party action under a reservation of rights but failed to disclose to the insured its interest in obtaining an allocated award, then the insured's burden to allocate the award between covered and uncovered claims is shifted to the insurer in the post-award coverage or declaratory judgment action. Remodeling, 819 N.W.2d at 617-18.

## II.

In this case, Travelers, the primary insurer, accepted defense of New Horizon in J.K.'s action, subject to a reservation of rights based on an Abuse and Molestation exclusion in its commercial general liability policy. Neither Travelers nor New Horizon commenced a declaratory judgment action regarding this coverage issue before the first trial. At that trial, defense counsel stipulated that New Horizon conceded liability but contested damages, a strategy communicated to RSUI. At the second trial, New Horizon again admitted liability.[3] The jury was not asked to find whether J.K. suffered sexual as well as physical assault, and its total award of $6,032,585 was not allocated between those two claims. After the second trial, Travelers paid its $3 million policy limits, without contesting coverage.

---

[3]The liability stipulation read to the jury stated that J.K. was assaulted by another male child who was nine years old, that New Horizon admits that it was solely responsible for J.K.'s supervision, safety, and security at the New Horizons day care center, and that it was negligent in failing to fulfill these obligations.

-4-

RSUI's policy provided that it has the right to participate in the defense of claims "to which this insurance may apply" but has no duty to defend unless the applicable limits of "underlying Insurance" have been exhausted. RSUI did not communicate a coverage position before the first trial and did not attend the first trial. After the first trial, RSUI sent New Horizon a coverage position letter noting that damages awarded may be barred by its Sexual Abuse or Molestation Exclusion. During the second trial, RSUI retained a jury consultant to work with defense counsel, and its claims representative attended the first two days of trial. Following the second verdict, RSUI again issued a reservation of rights letter and refused New Horizon's demand for indemnity of the unpaid balance of J.K.'s judgment.

## III.

It is undisputed that J.K. asserted physical assault claims that were covered by RSUI's excess liability policy, and that the unpaid balance of the $6,032,585 judgment in J.K.'s favor was within the $8 million limit of RSUI's excess policy. RSUI contends that it nonetheless has no duty to indemnify New Horizon because a substantial portion of that award -- perhaps all of it in excess of the amount paid by Travelers -- was based on claims of sexual assault that were barred by RSUI's exclusion and therefore uncovered. This contention turns on two distinct issues: whether J.K. was awarded damages for sexual assault that fell within the RSUI excess policy exclusion, and if so, what portion of the total award must be allocated to that uncovered claim.

The district court granted New Horizon summary judgment because, without an allocated award or jury interrogatory, RSUI is unable to prove "that the jury determined sexual abuse had occurred or that one cent of the award was based on such a determination." Under Minnesota law, this improperly linked two distinct issues -- the excess liability insurer's right to defend a post-award coverage action by proving that the award was based at least in part on an uncovered claim, and the

-5-

failure to *allocate* the award between covered and uncovered claims. See UnitedHealth Group, 941 F. Supp.2d at 1035-36. Whether J.K. proved an uncovered claim -- sexual assault -- was a coverage issue that was not "necessary or essential" for the jury to determine in the third party action after New Horizon conceded liability. Thus, it was an issue RSUI is "entitled to litigate" in this action. Brown, 293 N.W.2d at 825. Like other issues where there are no findings of fact, "we look at the evidence in the underlying action to resolve the issue of indemnification." Houg v. State Farm Fire & Cas. Co., 509 N.W.2d 590, 592 (Minn. App. 1993). Having the court in a post-award coverage action determine whether J.K. presented and proved a claim of sexual assault does not impugn the jury verdict; the jury was not asked to address the issue. As it is undisputed that New Horizon proved a claim of physical assault covered by the RSUI policy, RSUI has the burden to prove that the award also included an uncovered claim, here, sexual assault excluded by its policy. See Remodeling, 819 N.W.2d at 617.

If RSUI establishes that J.K. proved an uncovered sexual assault claim as well as a covered physical assault claim, then the court must address the final coverage issue -- how to allocate the total award. In Remodeling, the Minnesota Supreme Court considered the allocation issue in the context of a primary insurer that refused to indemnify its insured for an arbitration award that included both covered and uncovered claims. The Court discussed at length whether the insured's duty to prove coverage by allocating the award shifted if the primary insurer controlling defense of the third party action did not give the insured proper notice of the need to allocate. 819 N.W.2d at 616-18. In remanding for a determination of this issue, the Court instructed that, whichever party has the burden to allocate, "both parties may present evidence and the district court must, as best it can, establish the allocation the arbitrator would have made if allocation had been requested." Id. at 618.

The district court did not address the issue of which party has the burden to allocate an unallocated jury award. Rather, it refused to undertake post-award

-6-

allocation, limiting the decision in <u>Remodeling</u> to arbitration awards, which courts "commonly review." No Minnesota case has subjected a general jury award "to the same type of *post hoc* allocation," the court observed, and courts "possess[] no divining rod capable of determining the proportion of damages awarded on covered versus non-covered claims." This reasoning has considerable persuasive force, but the question in this diversity action is to "predict how the Supreme Court of Minnesota would rule if this issue came before it." <u>Jerry's Enters., Inc.</u>, 845 F.3d at 887 (quotation omitted).

Our best guide is <u>Remodeling</u>. Although the case involved an unallocated arbitration award, the Court relied on the Fifth Circuit's decision in <u>Duke</u>, where, in remanding for determination of the burden to allocate an unallocated jury award, the court instructed:

> The primary source of evidence [for allocating the jury's damage award] will be, of course, the transcript of the merits trial, containing the evidence on which the jury based its verdict. The trial judge, as trier of fact, will be in the position of establishing as best he can the allocation which the jury would have made had it been tendered the opportunity to do so.

468 F.2d at 984. The Court in <u>Remodeling</u> used virtually the same language in remanding and added in a footnote:

> We recognize that, under some circumstances, this will present an exceptionally difficult task. *See, e.g., Gay & Taylor, [Inc. v. St. Paul Fire & Marine Ins. Co.*], 550 F. Supp. [710,] 717 [W. D. Okla. 1981)] (making a "logical" apportionment of an unallocated settlement and acknowledging that the apportionment was "necessarily arbitrary"). Nevertheless, we are confident that district courts are up to the challenge.

819 N.W.2d at 618 n.4. Thus, the Court not only did not limit its analysis to coverage disputes arising from unallocated arbitration awards; it relied on cases applying the same analysis to unallocated jury awards (Duke) and to unallocated settlements (Gay & Taylor).[4] Moreover, each of these three cases involved a coverage dispute between an insured and its primary insurer, who had controlled defense of the third party claims and was in a position, along with the insured, to obtain (or attempt to obtain) an allocated settlement, arbitration award, or jury verdict. Here, the coverage dispute is between the insured and RSUI, an excess liability insurer that may have participated in but did not control defense of the third party action, and that is "entitled to litigate" its coverage defense in a post-award lawsuit. We conclude the Supreme Court of Minnesota would apply its allocation analysis in Remodeling and require the court in the post-award lawsuit to allocate "as best it can" the unallocated jury award between covered and uncovered claims.

Accordingly, we remand this case for further proceedings to give RSUI an opportunity to establish that the jury's unallocated damages award included uncovered as well as covered claims, and if so, for an allocation of the award between those claims to determine whether RSUI's excess policy covers all or any part of New Horizon's liability not paid by Travelers. Each party argues that, if we remand for further proceedings, we should resolve in its favor the issue of the burden to prove allocation. We decline to do so. The Minnesota Supreme Court in Remodeling adopted a complex, fact-intensive analysis for determining that issue when a primary insurer with the duty to defend controlled the defense of the third party action. Applying that analysis to this case, which involves an excess insurer, two jury trials,

---

[4]The court allocated the settlement between covered and uncovered claims in Gay & Taylor. This type of settlement must be distinguished from many Minnesota cases that involved what are called "Miller-Shugart agreements." Those agreements are *unenforceable* if the insured fails to allocate the settlement among multiple insureds or uncovered claims. See Corn Plus Coop. v. Cont'l Cas. Co., 516 F.3d 674, 681 (8th Cir. 2008), and cases cited.

and many procedural complexities, should be decided by the district court in the first instance.  Likewise, we decline to address New Horizon's alternative concurrent-cause argument.  See Waseca Mut. Ins. Co. v. Noska, 331 N.W.2d 917, 920 (Minn. 1983).

## IV.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____