NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0475n.06

No. 21-5129

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOSHUA DONALD TARTER,

    Plaintiff-Appellant,

v.

NAVIGATORS INSURANCE
COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Oct 25, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Navigators Insurance Company sought to resist paying the costs of defending its insured, plaintiff Joshua Donald Tarter, in a 2018 lawsuit filed in the United States District Court for the Eastern District of Kentucky, *C-Ville Fabricating, Inc., et al. v. Joshua Donald Tarter, et al.*, No. 5:18-cv-00379-KKC (E.D. Ky. Mar. 26, 2019). Relying upon what is known as the "insured versus insured exclusion" in its Directors and Officers Liability policy, Navigators claimed that it had no duty to defend Joshua[1] in what can be described only as a high-stakes family feud. Joshua then sued Navigators, both alleging that the company breached its contract with him and seeking a declaration that Navigators was obligated to defend and indemnify him in the underlying litigation. The district court,

---

[1] Given the presence of so many Tarter family members in these connected lawsuits, the first names of Tarters will be used to lessen any confusion.

exercising its diversity jurisdiction, examined the relevant provisions of the applicable insurance policy and concluded that Navigators' position in the dispute was the sounder one. The district court thus granted the company's motion to dismiss the lawsuit. We agree with the district court's reasoning and affirm.

## BACKGROUND

In 1945, members of the Tarter family founded Tarter Gate, a business that made and sold wooden gates in central Kentucky. Over the years, the company expanded and diversified by manufacturing both farm and ranch equipment. From that relatively humble start, there now "are a number of entities under common ownership and control that combine with other entities to carry on the family business." The various Tarter businesses, referred to collectively as the Tarter Companies, include C-Ville Fabricating, Inc., d/b/a Tarter Industries; Tarter Management Company, Inc.; Tarter Gate Company, LLC, operating under the assumed name of Tarter Farm & Ranch Equipment; and Tarter Tube, LLC.

Eventually, ownership of the Tarter Companies was consolidated in the hands of two Tarter brothers, David and Donald, and their respective wives, Anna Lou (now Anna Lou Tarter Smith) and Joy. David and Anna Lou had two children, LuAnn (now LuAnn Tarter Coffey) and Douglas. Donald and Joy had three children, Keith, Joshua, and Nell (now Nell Tarter Duggins). Together, Keith, Joshua, and Nell own 50% of the Tarter Companies, and Anna Lou, LuAnn, and Douglas own the remaining 50%, with Anna Lou owning the largest individual share at 25%. Anna Lou also serves as a director of C-Ville Fabricating and Tarter Management, as well as serving as a manager of Tarter Gate and Tarter Tube. Joshua also "had management responsibilities in relation to all Tarter Companies."

Any semblance of family cooperation ended, however, when Joshua, together with Thomas Gregory and Xiaofeng Chen, formed a Chinese shell company, Hong Kong QMC Industry Company, Ltd. According to allegations in a lawsuit that C-Ville Fabricating, Anna Lou, LuAnn, and Douglas eventually filed against Joshua, Gregory, and QMC, the shell company was responsible not only for selling supplies to the Tarter Companies from China at grossly inflated prices, but also for embezzling trade secrets from the Tarter Companies. Specifically, that complaint alleged that Joshua "used [his] position[ ] with the Tarter Companies to overcharge the Tarter Companies by, at least, $20,000,000 over the term of the scheme from *one* supplier."

Facing that lawsuit, Joshua called upon Navigators to defend him. The insurance company declined to do so, however, noting that its Directors and Officers Liability policy specifically excluded from coverage (including the insurer's duty to defend):

> [A]ny **Claim**[2] made against any **Insured** . . . by or on behalf of any **Insured** or any security holder of the **Company**; provided, however, that this exclusion shall not apply to any **Claim** . . . brought by any security holder of the **Company**, whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person**[.][3]

In large part, Navigators based its decision on the policy's broad definition of the word "**Claim,**" which, in pertinent part, was defined to mean "a civil . . . proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint . . . ." Because at least Anna Lou, an insured party, had commenced a civil proceeding against another insured party (Joshua) by service of a complaint, Navigators claimed that it had no duty to defend Joshua in the lawsuit despite the presence of any uninsured party as an additional plaintiff.

---

[2] Bolded terms in the Directors and Officers Liability policy were defined specifically elsewhere in the insurance contract.

[3] The first clause of the quoted policy provision is known as the "insured versus insured exclusion," and the proviso is known as the "assistance exception" to that exclusion.

Latching on to the fact that one of the named plaintiffs in the *C-Ville Fabricating* action was *not* an insured party, Joshua asserted that the policy's "insured versus insured exclusion" was not applicable. Instead, he argued that the "allocation provision" was included in the policy to cover just such a situation and required Navigators to provide him with a defense to the suit. Pursuant to that "allocation provision":

> If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insureds** and the Insurer recognize that there must be an allocation between **Loss** and uninsured damages, settlement amounts and other liabilities in connection with such **Claim**. The **Insureds** and the Insurer will use their best efforts to agree upon a fair and proper allocation. If no agreement can be reached, the Insurer will advance **Costs of Defense** based on what it believes is a fair and proper allocation until such time as the issue can be resolved.

In addressing the parties' disagreements, the district court examined cases from other jurisdictions that have resolved similar insurance-coverage disputes. The district court found most helpful and instructive the opinion of the Eighth Circuit Court of Appeals in *Jerry's Enterprises, Inc. v. U.S. Specialty Insurance Co.*, 845 F.3d 883 (8th Cir. 2017). In *Jerry's Enterprises*, the court was confronted, as are we, with a lawsuit brought against an insured person by both insured and uninsured plaintiffs. Moreover, the policy at issue in *Jerry's Enterprises*, like the policy here, contained an "insured versus insured exclusion" with an "assistance exception," as well as an allocation clause and a broad definition of the term "claim." Affirming the district court's grant of summary judgment to the insurance company on Jerry's Enterprises' demand for indemnity, the Eighth Circuit reasoned:

> A claim is not afforded its ordinary meaning under the insurance policy. Rather, the policy defines Claim as a civil proceeding commenced by service of a complaint, i.e., the entirety of the . . . lawsuit. U.S. Specialty, therefore, need only show that the exclusion clause applied to the lawsuit as brought. It has done so. We have no room under the language of the exclusion clause to apply the clause to some parts of a lawsuit but not others.

*Id.* at 888. Moreover, the Eighth Circuit noted that "the allocation clause does not restore coverage for any part of the" lawsuit, and "applying the allocation clause to the . . . claim would render the assistance exception superfluous, effectively reading that exception out of the contract." *Id.* at 890 (citation omitted).

## CONCLUSION

The district court's grant of Navigators' motion to dismiss for failure to state a claim in this case was based on reasoning identical to that used by the Eighth Circuit in *Jerry's Enterprises*. In issuing its opinion in this litigation, the district court diligently considered relevant caselaw and ably articulated the reasons why judgment should be entered in favor of Navigators. Given the relatively unique confluence of factors that led to the filing of this lawsuit, we believe that our issuance of a full written opinion would be duplicative and also would serve no useful precedential purpose. We thus AFFIRM the judgment of the district court for the reasons set forth in that court's Order and Opinion filed on January 15, 2021. *Tarter v. Navigators Ins. Co.*, No. 5:20-240-KKC, 2021 WL 149302 (E.D. Ky. Jan. 15, 2021).